UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| IFEDOO NOBLE ENIGWE, | ) | CASE NO. 4:07 CV 0827 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| NYDIC, OPEN MRI OF AMERICA, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

On March 20, 2007, pro se plaintiff Ifedoo Noble Enigwe filed the above captioned complaint. He seeks monetary relief for the "tortious injury inflicted" by an employee of defendant NYDIC, Open MRI of America ("NYDIC") when one of its units was stationed at the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton) where petitioner is incarcerated. Mr. Enigwe, who describes himself as a resident of Ohio, but "from the state of Pennsylvania," asserts this court's jurisdiction based on diversity of citizenship. He states that NYDIC is located in Boardman, Ohio and he seeks $10,00,000.00 in compensatory damages.

**Relevant Facts**

On November 19, 2003 Mr. Enigwe was schedule to have blood drawn and was taken

to an MRI truck owned by NYDIC and located on the grounds at F.C.I. Elkton. When the MRI nurse attempted to draw Mr. Enigwe's blood, however, she had difficulty locating a vein within which to insert the needle.  In response, a medical staff member with the Bureau of Prisons (BOP), Ms. Simpson, approached Mr. Enigwe and "volunteered to 'try'" and draw his blood.  Although Ms. Simpson was not a phlebotomist, she was permitted to attempt to draw Mr. Enigwe's blood.  After "several pokings of the needle into Plaintiff's arm with no success in locating a vein, [Ms. Simpson] suddenly dropped the needle, having discovered blood seeping out of her own finger."  (Compl. at 2-3.) Ms. Simpson immediately left the MRI unit to return to the F.C.I. Elkton medical department.

Shortly after Ms. Simpson's departure, Mr. Folkwein, a registered nurse at F.C.I. Elkton approached Mr. Enigwe.  Mr.Folkwein advised the plaintiff that "something's come up, and that Plaintiff had to be taken back to the Institution's medical department to 'donate blood.'" (Compl. at 3.)  Once he returned to the medical department, a physician's assistant explained that he had shared a needle with Ms. Simpson and both of them would be required to have their blood drawn to test for "HIV, herpetitis [sic], A, B, and C, Herpes, Syphilis and other deadly diseases." (Compl. at 3.)

The test results for Mr. Enigwe were negative.  He was not notified of the results of Ms. Simpson's tests, however.  His present concern is that HIV/AIDs "could take up to ten years to incubate in the blood." (Compl. at 3.)  Having shared a needle with Ms. Simpson, it is plaintiff's expressed concern that he could "very well be at risk of one day contracting HIV/AIDs and any of the other named diseases." (Compl. at 3.)

Mr. Enigwe asserts that the nurse employed by defendant committed a tortious act when she continued to poke his arm causing "aberasions [sic] and swelling on both arms which

lasted a couple of weeks." (Compl. at 4.) Moreover, she allowed an untrained person to also attempt to draw blood which resulted in his contact with that person's blood and potential exposure to deadly diseases. As a result of this injury and exchange of blood, he "now has genuine fear that one day he would [sic] contract future deadly diseases." (Compl. at 4.)

## Standard of Review

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to section 1915(e).

## Collateral Estoppel

This is not the first time Mr. Enigwe has attempted to litigate this matter in federal court. On June 27, 2006, he filed a complaint against the United States in this court pursuant to the Federal Tort Claims Act (FTCA). See Enigwe v. United States, Case No. 4:0cv1578 (N.D. Ohio filed June 27, 2006)(Gwin, J.) The issues in that complaint were identical to the issues he outlines in his present complaint. The case was subsequently dismissed, based in part on the fact that he

---

[1] A claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

failed to establish a 'diligence-discovery exception' to thwart the running of the statute of limitations and because he failed to allege an actual injury under the FTCA, and thus his attempt to satisfy Article III's standing requirement was unsuccessful.

Under the concept of collateral estoppel, Mr. Enigwe cannot relitigate an issue he previously litigated without success against a different party. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 4 (1979). Collateral estoppel, or issue preclusion, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 328-329 (1971). Until Parklane, the scope of collateral estoppel was limited by the doctrine of mutuality of parties. Under the mutuality doctrine, neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment. The underlying basis for this doctrine was premised on the notion that it is somehow unjust to permit a party to use a prior judgment when he himself would not be so bound. With the mutuality doctrine in place, a party who had litigated and lost in a previous action would have the opportunity to relitigate identical issues with new parties.

When faced with the question of "whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue," id. at 328, the Supreme Court answered a resounding "no." The Parklane court thus held that "the mutuality doctrine, under which neither party could use a prior judgment against the other unless both parties were bound by the same judgment, no longer applies." Parklane, 439 U.S. at 328. Therefore, although Mr. Enigwe's second action is based upon a different cause of action, under the doctrine of collateral estoppel the judgment in the prior suit precludes relitigation of the issues already

litigated and necessary to the outcome of the first action. 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 622-624 (2d ed. 1974); e. g., Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 326 (1955); Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, (1948); Cromwell v. County of Sac, 94 U.S. 351, 352-353 (1876).

## Conclusion

Based on the foregoing, this action is dismissed pursuant to §1915(e). Further, the court CERTIFIES pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

S/Peter C. Economus - 6/20/07
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE